IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 04-cv-00701-LTB-MJW

NICOLAS MEDRANO,

    Plaintiff,

v.

KARL SCHERCK,

    Defendant.

_____

ORDER
_____

    The Plaintiff, Nicolas Medrano ("Medrano"), filed suit in Colorado state court against the Defendant, Karl Scherck ("Scherck"), after Scherck, a Westminster, Colorado police officer, allegedly negligently and fatally shot Mr. Medrano's son. After Mr. Scherck filed a Motion to Dismiss for lack of subject matter jurisdiction, Mr. Medrano amended the Complaint, pressing an additional claim under 42 U.S.C. § 1983. Mr. Scherck then removed the case to this Court within the time prescribed in 28 U.S.C. § 1446(b). Pending is Mr. Scherck's motion to dismiss Mr. Medrano's state law negligence claim because barred by the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101 *et seq.* ("Immunity Act").

    A motion to dismiss invoking the Immunity Act raises a jurisdictional issue; the plaintiff has the burden of demonstrating jurisdiction. *Padilla ex rel. Padilla v. School Dist. No. 1 in City and County of Denver*, 25 P.3d 1176, 1180 (Colo. 2001); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974. When the facts concerning jurisdiction under the Immunity Act are

in dispute, I am charged with conducting an evidentiary hearing before ruling on the jurisdictional issue. *Padilla*, 25 P.3d at 1180; *Maestas v. Lujan*, 351 F.3d 1001, 1016 (10th Cir. 2003). On September 26, 2005, I conducted an evidentiary hearing and took oral arguments, which supplemented the parties' briefs and written evidence. For the reasons stated below, I GRANT the motion.

## I. Allegations

The following allegations appear in the Amended Complaint.

On September 22, 2003, while acting as an officer of the Westminster, Colorado Police Department ("WPD"), Mr. Scherck allegedly shot Sergio Alejandro Medrano, Mr. Medrano's son. Sergio Medrano, who died as a result of the gunshot, was allegedly unarmed at the time. Mr. Medrano alleges that Mr. Scherck's use of deadly force under the circumstances was unreasonable and without justification. The circumstances of the shooting are not alleged in the Amended Complaint.

Mr. Medrano asserts a state law claim for negligence and wrongful death, a claim pursuant to 42 U.S.C. § 1983, and a claim for exemplary damages on an unidentified theory.

## II. Facts

Mr. Medrano has proffered a report of the Denver District Attorney, which recites the relevant events. Mr. Scherck expanded upon some details at the hearing. Also, Dan Montgomery, the Chief of the WPD, testified. From all of that evidence, I find the following facts.

Shortly before 1:00 P.M. on Monday, September 22, 2003, Mr. Scherck, enjoying a day off from his duties as a WPD patrol officer, walked from his house at 1451 South Lincoln Street

in Denver to his elderly mother's house, located on the other side of the street and a few houses away at 1402 South Lincoln, intending to mow his mother's lawn.  His knowledge of recent burglaries in the neighborhood, some resulting in violence, alerted him to the potential danger posed by a young man, later identified as Sergio Medrano, who emerged from the bushes in the front yard of Mr. Scherck's mother's house.  Sergio walked past Mr. Scherck on the sidewalk and acknowledged Mr. Scherck with a nod.

After checking the back yard of his mother's property, Mr. Scherck ran home.  As he ran, he saw Sergio standing on the front porch of another neighbor's house, at 1434 South Lincoln, pulling on the door and peering into the windows.  Mr. Scherck retrieved from his house a cellular telephone and a handgun.  Though the gun belongs to Mr. Scherck, it is registered with the WPD and he carries it inside his protective vest as a "backup" when on duty.  WPD-issued ammunition occupied the magazine.  Mr. Scherck did not retrieve handcuffs or other non-lethal law enforcement equipment.  He did not intend to arrest Sergio but hoped to act as a witness and to thwart any further attempts at burglary.

As he left his house, Mr. Scherck called the 9-1-1 emergency line, reported the suspected burglary to the Denver Police Department ("DPD"), and described Sergio.  He saw Sergio walking through the back yard at 1434 Lincoln, leaving the house, and gave pursuit on foot.  He was still on the phone with the 9-1-1 operator when he arrived in the back yard.  Seeing ajar a pedestrian door to the nearby garage, Mr. Scherck pushed the door open.  Standing inside the darkened garage (the weather was sunny and clear and the lighting outside bright), Sergio wielded a one-inch by four-inch board in a threatening manner.  The shooting ensued.

On September 7, 1993, more than ten years before this incident occurred, Mr.

Montgomery, acting pursuant to the authority vested in him by city ordinance, issued Westminster Police Department Directive number 93-3 ("Directive 93-3"). The stated purpose of Directive 93-3 is "to grant officers the authority to act pursuant to CRS Section 16-3-110 when outside the jurisdiction of the department and within the State of Colorado." Directive 93-3, 1. It provides, *inter alia*,

> The Police Department recognizes that situations may warrant compelling and immediate action by officers while outside the City of Westminster. Therefore, in addition to any other authority granted to officers by department regulations or by law, an officer is hereby authorized to act in an on-duty or off-duty status outside the City in the following situations, recognizing that he/she assumes an "on-duty" status when taking an official action while off duty.
>
> I. Authorization:
>
> A. Officers are authorized to act in an on-duty or off-duty status outside the city when a misdemeanor or felony is being committed in the officer's presence that compels immediate police intervention. ...

*Id*. Directive 93-3 persisted unamended through the date of the shooting.

After administrative review, Mr. Montgomery determined that Mr. Scherck had on September 22, 2003 acted lawfully and appropriately pursuant to Section I.A. of Directive 93-3 and that Mr. Scherck had assumed on-duty status at the time of the shooting.

### III. Discussion

Mr. Scherck argues that Mr. Medrano's state law claim for negligence is barred by the Immunity Act, Section 24-10-1-5 of which provides, *inter alia*, "[N]o public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his duties and within the scope of his employment, unless such act or omission was willful and wanton, except as provided in this article." Section 24-10-106 further provides, *inter alia*,

4

>(1) A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section. Sovereign immunity is waived by a public entity in an action for injuries resulting from [one of certain enumerated acts].
>...
>(2) Nothing in this section... shall be construed to constitute a waiver of sovereign immunity where the injury arises from the act, or failure to act, of a public employee where the act is the type of act for which the public employee would be or heretofore has been personally immune from liability.

Mr. Scherck's alleged wrongdoing does not fall within the any of the exceptions contained in Section 24-10-106 (1). Mr. Medrano has not alleged that Mr. Scherck acted willfully or wantonly. The only question remaining is whether Mr. Scherck acted in the performance of his duties and within the scope of his employment.

Peace officers in Colorado are authorized by statute to enforce all laws of the State while acting within the scope of their authority and in the performance of their duties. Colo. Rev. Stat. § 16-2.5-101(1). They also are authorized to carry firearms at all times. Colo. Rev. Stat. § 16-2.5-101(2). Colo. Rev. Stat. § 16-3-109 provides, *inter alia*,

>A peace officer, as described in section 16-2.5-101, who, while off duty, is employed in a capacity specifically permitted by policies and procedures adopted by such officer's governmental entity employer shall possess the status and authority which would otherwise be afforded an on-duty peace officer as described in section 16-25-101, acting within the course and scope of such officer's employment.

The City of Westminster, through Mr. Montgomery's promulgation of Directive 93-3, specifically permitted Mr. Scherck to act with the authority of an on-duty peace officer on September 22, 2003. This much Mr. Medrano cannot dispute. Instead, he argues that the circumstances did not compel Mr. Scherck to act and so Mr. Scherck cannot have come within the protection of Section 1.A. of Directive 93-3.

Directive 93-3 must be read in light of Colo. Rev. Stat. § 16-3-110, which it explicitly references. That statute provides, *inter alia*,

> A peace officer shall have the authority to act in any situation in which a felony or misdemeanor has been or is being committed in such officer's presence, and such authority shall exist regardless of whether such officer is in the jurisdiction of the law enforcement agency that employs such officer or in some other jurisdiction within the state of Colorado or whether such officer was acting within the scope of such officer's duties when he or she observed the commission of the crime, when such officer has been authorized by such agency to so act. The local law enforcement agency having jurisdiction shall be immediately notified of the arrest and any person arrested shall be released to the custody of the local law enforcement agency.

Colo. Rev. Stat. § 16-3-110(2). Apparent from this provision is that Mr. Scherck need not have acted under compulsion to have come within the parameters of the statute. As counsel pointed out in oral arguments, the State might well have decided that, as a policy matter, it would rather not inhibit trained law enforcement officers from responding freely and appropriately to felonies or misdemeanors committed in their presence. That Mr. Montgomery saw fit to add to Directive 93-3 the more stringent requirement that the crime compel immediate action is not here a barrier to immunity; Mr. Montgomery concluded, after administrative review, that Mr. Scherck had satisfied the requirements of the Directive.

Accordingly, it is ORDERED that:

1) the motion to dismiss for lack of subject matter jurisdiction (Doc 6) is GRANTED; and

2) the first claim for relief is dismissed.

Dated: September  26 , 2005, in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock

Lewis T. Babcock, Chief Judge