IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 04-cv-00701-LTB-MJW

NICOLAS MEDRANO,

    Plaintiff,

v.

KARL SCHERCK,

    Defendant.

_____

ORDER
_____

    The defendant, Karl Scherck, in this 42 U.S.C. § 1983 case moves for summary judgment. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons stated below, I GRANT the motion. Before discussing the motion, I deal with preliminary matters.

## I. Motion to amend Amended Complaint

    Nicolas Medrano has no standing to bring this Section 1983 claim, as currently pled. Mr. Scherck is alleged to have shot Mr. Medrano's son unreasonably while acting in the line of duty. Mr. Medrano has established no claim in his own behalf for interference with familial association. The undisputed evidence is that Mr. Scherck was not acquainted with Mr. Medrano or his son and therefore could not have known of the relationship between them. As the Tenth Circuit has stated,

> Not every statement or act that *results* in an interference with the rights of intimate association is actionable. Rather, to rise to the level of a constitutional claim, the

>defendant must *direct* his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship.

*Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993) (emphasis original). *See also*, *Trujillo v. Board of County Com'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985); *Hill v. Martinez*, 87 F. Supp. 2d 1115, 1119 (D. Colo. 2000).

The Tenth Circuit has ruled that the remedy for a Section 1983 violation resulting in death of the victim is a survival action brought by the estate of the deceased victim. *Berry v. City of Muskogee*, 900 F.2d 1489, 1506-1507 (10th Cir. 1990). After a delay, Mr. Medrano has secured appointment as representative of his son's estate and now seeks leave to file a second amended complaint stating a claim against Mr. Scherck in that capacity. Mr. Medrano may amend pursuant to the liberal standard of Fed. R. Civ. P. 15. However, for the reasons stated below, this success is short-lived.

## II. Evidentiary disputes

This case arises from Nicolas Medrano's allegation that Mr. Scherck, an officer of the Westminster, Colorado Police Department ("WPD"), unreasonably shot and killed Sergio Alejandro Medrano, Mr. Medrano's son. At the time of the shooting, Mr. Scherck was on the telephone with an emergency service, or 9-1-1, operator. Mr. Medrano asks me to consider the recording of that call and a transcript of its substance.

Mr. Scherck, who does not dispute the authenticity of the recording, nevertheless objects to my consideration of Mr. Medrano's transcription of it. I agree with Mr. Scherck that the original recording is the best evidence of the recording's contents. Fed. R. Evid. 1002. I note, however, that the transcript does not deviate materially from the recording and that the person

who transcribed the recording has authenticated the transcription. Though I do not rely upon the transcript or reference it below, I see no harm in its inclusion in the record as an aid.

**III. Facts**

With those issues resolved, the operative questions narrow. The following facts, adduced from the record supplied by the parties, are undisputed.

Shortly before 1:00 P.M. on Monday, September 22, 2003, Mr. Scherck, enjoying a day off from his duties as a WPD patrol officer, walked from his house at 1451 South Lincoln Street in Denver to his elderly mother's house, located on the other side of the street and a few houses away at 1402 South Lincoln, intending to mow the lawn. He carried keys to his mother's garage. A young man, later identified as Sergio Medrano, the plaintiff's son, emerged from the bushes in the front yard of Mr. Scherck's mother's house. The stranger, dressed in a black shirt and black pants, walked past Mr. Scherck on the sidewalk and acknowledged Mr. Scherck with a nod.

Mr. Scherck continued to the rear of his mother's house and looked into the back yard, but saw no one. Fearing that the interloper had visited some ill fate upon his mother, Mr. Scherck turned for home – slowly at first, so as not to arouse alarm – then broke into a jog. As he ran, he saw Sergio standing on the front porch of another neighbor's house, at 1434 South Lincoln, pulling on the door and peering into the windows. Mr. Scherck retrieved from his house a cellular telephone and a semi-automatic pistol. Though the gun belongs to Mr. Scherck, it is registered with the WPD and he carries it inside his protective vest as a "backup" when on duty. When not on duty, Mr. Scherck regularly carries the weapon for protection. WPD-issued ammunition occupied the magazine. Mr. Scherck did not retrieve handcuffs; he did not intend to arrest Sergio but hoped to act as a witness and to thwart any further attempts at burglary.

As he left his house, Mr. Scherck called the 9-1-1 emergency line, reported the suspected burglary to the Denver Police Department ("DPD"), and described Sergio to the operator. As he talked, he walked toward 1434 South Lincoln Street and briefly concealed himself behind a nearby stone wall. Mr. Scherck was acquainted with the residents of the home and was "99.9 percent sure" that no one was home. He intended to direct DPD officers to establish a perimeter around the property, but presently saw a man in dark clothing, resembling the suspected burglar, emerge from the rear of the house and travel through the back yard empty-handed. The man then again disappeared from view. Mr. Scherck gave pursuit.

Mr. Scherck arrived in the back yard, which was walled in by a six-foot high fence. The suspected burglar was not within sight. Mr. Scherck speculated that the man might have scaled the fence and entered a neighboring yard. He then noticed that a pedestrian door to the adjacent, detached garage was ajar. Mr. Scherck knew that the residents of the house had two dogs and saw only one. He conjectured that one of the dogs might be in the garage, but also considered that "it might even be the bad guy." He pushed the door open further. Standing inside the darkened garage (the weather was sunny and clear and the lighting outside bright), Sergio wielded a one-inch by four-inch board in one hand, and "squared off" toward Mr. Scherck. The other hand he thrust into his jacket pocket as he took a step toward Mr. Scherck, advancing to within five or six feet of the door. Mr. Scherck withdrew his gun from his waistband and fired three rapid shots, which proved fatal.

Throughout the encounter, Mr. Scherck was connected with the emergency operator. The resulting recording reveals that immediately prior to the shooting, Mr. Scherck speculated that Sergio "might be" in back of the house. He then yelled, "Police officer!" The shots ensued. The

confrontation was momentary; a couple of second elapsed between Mr. Scherck's conjecture concerning Mr. Sergio's location and the shooting.

## IV. Discussion

Previously, I determined after an evidentiary hearing that Mr. Scherck was acting within the scope of his official duties when he retrieved his phone and gun and pursued Sergio. Colo. Rev. Stat. § 16-3-110 authorizes peace officers:

> to act in any situation in which a felony or misdemeanor has been or is being committed in such officer's presence, and such authority shall exist regardless of whether such officer is in the jurisdiction of the law enforcement agency that employs such officer or in some other jurisdiction within the state of Colorado or whether such officer was acting within the scope of such officer's duties when he or she observed the commission of the crime, when such officer has been authorized by such agency to so act.

Colo. Rev. Stat. § 16-3-110(2). WPD has in place a directive, issued pursuant to the statute, which authorizes its officers "to act in an on-duty or off-duty status outside the city when a misdemeanor or felony is being committed in the officer's presence that compels immediate police intervention." WPD Directive 93-3 § I.A.

I "analyze the use of deadly force against a suspect under the Fourth Amendment, which guarantees citizens the right to be free from unreasonable searches and seizures." *Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005). "A police officer may reasonably use deadly force to apprehend a fleeing suspect if the officer has probable cause to believe that the suspect poses a serious threat of physical harm either to the officer or others and if, where feasible, the police warn the suspect." *Id.* In addition to evaluating the actual use of force, I must consider whether Officer Sherck's "own 'reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" *Id.* at 968 (quoting *Jiron v. City of Lakewood*, 392 F.3d

410, 415 (10th Cir. 2004)). I am to evaluate reasonableness on the totality of the circumstances from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. *Id*. at 967.

Two decisions primarily frame the dispositive question in this case. First, in *Sevier v. City of Lawrence*, 60 F.3d 695 (10th Cir. 1995) the Tenth Circuit declined to revisit a district court's denial of summary judgment sought by three police officers, defendants in a Section 1983 action, who had fatally shot the plaintiffs' son. The officers, responding to a call by the plaintiffs that their son had locked himself in his bedroom with a butcher knife, enticed the young man from his room, knife in hand. The parties, who were all present at the event, disputed whether the boy attacked one of the officers with the knife or rather merely stood in his doorway with the knife at his side before he was shot. *Sevier*, 60 F.3d at 698. The Court of Appeals determined that it had no jurisdiction to take an interlocutory appeal from a district court's determination that a factual dispute existed for trial. *Id*. at 700.

Second, in *Jiron*, the court affirmed entry of summary judgment for a defendant police officer who shot, without fatal effect, the teen-aged plaintiff. The plaintiff, suspected of public drunkenness and theft, absconded when the defendant tried to manacle her. As she dashed through a nearby second-story apartment with the officer in pursuit, the plaintiff grabbed a knife, six to ten inches in length, and fortified herself in a bedroom. The defendant heard the plaintiff escaping through a window, opened the bedroom door, and ordered the plaintiff to desist. Thrice the plaintiff advanced, knife in hand, at the defendant, who retreated. The third time, the plaintiff turned the knife on the defendant at a distance of five feet. The defendant shot the plaintiff in the abdomen. *Jiron*, 392 F.3d at 412.

The plaintiff pled guilty to the ensuing criminal charges against her and stipulated to the above facts as the basis of her plea.  After a federal district court entered summary judgment for the defendant officer on the plaintiff's subsequent Section 1983 claim, the plaintiff argued on appeal, *inter alia*, that the defendant had recklessly and intentionally created the necessity for the use of deadly force by cornering her in and following her into the bedroom.  The Court of Appeals rejected this argument, explaining,

> Had [the defendant] left Plaintiff in the bedroom, she risked the escape of an armed and agitated suspect into the public and risked a potentially more violent confrontation between [her fellow officer] and Plaintiff as Plaintiff attempted to escape out the bedroom window. ... The facts suggest that [the defendant] adequately performed her duties as a reasonable law enforcement officer by taking steps to prevent an armed and agitated suspect from escaping.

*Ibid* at 418.  The court distinguished *Sevier* on the grounds that the decedent in that case was not suspected of having committed any crime and was secure in his room, where he posed no threat to others.  *Id*. at 419.

Utilizing the Tenth Circuit's analytical framework, I discern three moments in time at which the reasonableness of Officer Scherck's conduct may productively be judged.  First, while Mr. Scherck was ensconced behind the stone wall, he was in contact with an emergency operator, attempting to report the situation to the DPD.  He did not at that time act recklessly.

Second, after Mr. Scherck witnessed Sergio emerge from behind the house, Sergio's whereabouts again became a mystery.  Mr. Scherck, who had voluntarily assumed the responsibilities of an acting peace officer, did not recklessly or deliberately create the need to use lethal force by following Sergio into the back yard and looking into the garage.  Fearing that the suspect had fled, Mr. Scherck was attempting to ascertain his location and was not seeking a

7

confrontation; Mr. Scherck had not, at that point, drawn his weapon and he was still providing information to the emergency operator.

Mr. Scherck had witnessed Sergio attempt burglary and had at least a reasonable suspicion that the attempt had been successful. Like the officer in *Jiron*, Mr. Scherck pursued a suspected criminal. Like the officer in *Jiron*, Mr. Scherck could not be sure at that moment that Sergio posed no threat to other persons. Indeed, Mr. Scherck feared that Sergio had escaped onto a neighboring property or might do so.

Third, when Mr. Scherck opened the garage door, he encountered a man armed with a board, who charged forward as he thrust his hand into his pocket, as if to retrieve a weapon. The man was five or six feet away. Mr. Scherck did not act unreasonably in drawing and discharging his weapon. It is undisputed that Mr. Scherck had reason to believe himself in imminent danger. Unlike the plaintiffs in *Sevier*, Mr. Medrano has demonstrated no genuine issues of material fact and Mr. Scherck is entitled to judgment as a matter of law.

Accordingly, it is ORDERED that:

1) Mr. Medrano's motion to amend the Amended Complaint is GRANTED;

2) Mr. Scherck's motion for summary judgment is GRANTED; and

3) summary judgment shall enter on Mr. Scherck's behalf, with costs.


Dated: May __23__, 2006, in Denver, Colorado.

                                        BY THE COURT:

                                        __s/Lewis T. Babcock_____
                                        Lewis T. Babcock, Chief Judge